**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MUSTAFA KAMAL KHAN, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:23-CV-00093 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| STATE, | : | |
| UNITED STATES EMBASSY IN | : | |
| ISLAMABAD, PAKISTAN, | : | |
| ANTONY BLINKEN, and | : | |
| ANGELA AGGELER, | : | |
| Defendants. | : | MARCH 22, 2024 |

**RULING ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 11)**

**I.    INTRODUCTION**

Plaintiff Mustafa Kamal Khan ("Mr. Khan") brings this action under the
Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.; the Administrative
Procedure Act ("APA"), 5 U.S.C. § 701 et seq.; the Mandamus Act, 28 U.S.C. § 136;
and the Fifth Amendment of the United States ("U.S.") Constitution against the U.S.
Department of State ("the State Department"); the U.S. Embassy in Islamabad, Pakistan
("the Embassy"); Antony Blinken ("Blinken"), the Secretary of State; and Angela
Aggeler, the Chargé D'Affaires of the Embassy.  See Complaint ("Compl.").  The plaintiff
alleges that the defendants have unreasonably delayed in processing and adjudicating
the visa application of his daughter, Neha Kamal Khan ("Ms. Khan").  See id.

The defendants have filed a Motion to Dismiss, see Defendants' Motion to
Dismiss ("Defs.' Mot.") (Doc. No. 11), which the plaintiff opposes, see Plaintiff's

Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp.") (Doc. No.

12).  For the reasons stated below, the Motion is granted.

## II.    BACKGROUND

### A.    Plaintiff's Alleged Facts

Mr. Khan, who is a U.S. citizen, is the relative visa petitioner for his daughter,

who is a citizen of Pakistan.  See Compl. ¶¶ 1-2, 7, 12.  Mr. Khan filed the visa Petition

for his daughter on September 22, 2014, and the Petition was approved on March 5,

2020.  See id. at ¶¶ 13-15.  The National Visa Center ("NVC") then "proceed[ed] . . . the

case and sent it to the U.S. Embassy in Islamabad, Pakistan for an interview."  See id.

at ¶ 16.  To date, however, the defendants have yet to schedule Ms. Khan's interview,

despite repeated inquiries from Mr. Khan.  See id. at ¶¶ 17-18.[1]

### B.    Procedural Background

Mr. Khan filed his Complaint on January 25, 2023.  See id.  Count One alleges

agency action unreasonably delayed, in violation of the APA and the Mandamus Act,

against all defendants.[2]  See id. at ¶¶ 19-33.  Count Two alleges violation of Mr. Khan's

---

[1] The defendants have also proffered Declarations from various government officials, including (1) a Declaration from Suzanne S. McGuire, the Immigrant Visa Unit Chief at the Embassy, attesting that the COVID-19 pandemic and evacuation of Afghanistan significantly impacted visa processing at the Embassy, see Declaration of Suzanne S. McGuire, Defs.' Ex. A (Doc. No. 11-2); (2) a Declaration from Joseph R. Carilli, Jr., an attorney adviser in the Bureau of Consular Affairs, attesting that USCIS approved Mr. Khan's Petition on behalf of his daughter on March 5, 2020, and that Ms. Khan's visa case became documentarily complete on April 7, 2021, see Declaration of Joseph R. Carilli, Jr., Defs.' Ex. B (Doc. No. 11-3); and (3) a Declaration from Thomas J. Flynn, the Fraud Prevention Manager at NVC, detailing the "backlog of documentarily completed applicants" in Ms. Khan's visa category, see Declaration of Thomas J. Flynn, Defs.' Ex. C (Doc. No. 11-4).

The plaintiff, in turn, has filed his own Affidavit detailing the struggles that his family has experienced due to the lengthy visa application process.  See Affidavit of Mustafa Khan, Pl.'s Ex. A (Doc. No. 12-1).

[2] The plaintiff sues defendants Blinken and Aggeler in their official capacities only.  See Compl. at ¶¶ 5-6.

Due Process rights under the Fifth Amendment against all defendants.  See id. at ¶¶ 34-37.

On April 10, 2023, the defendants filed a Motion to Dismiss Mr. Khan's Complaint.  See Mot. to Dismiss.  The plaintiff filed his Memorandum in Opposition on April 21, 2023.  See Pl.'s Opp.  On May 5, 2023, the defendants filed their Reply to plaintiff's Opposition.  See Defendants' Reply in Further Support of Motion to Dismiss (Doc. No. 14).

## III.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion.  See Makarova, 201 F.3d at 113.

### B.    Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.  In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## IV.    DISCUSSION

### A.    Statutory and Regulatory Framework

A non-U.S. citizen who has a family relationship with a U.S. citizen may obtain an immigrant visa.  See 8 U.S.C.  § 1151(b)(2)(A)(i).  For a non-U.S. citizen to obtain a visa, the U.S. citizen relative must first file a Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services ("USCIS").  See id. § 1154; 8 C.F.R. § 204.1(a)(1).  "Once the petition is approved, the journey for [certain] immediate-relative-visa seekers ends there: Visas in that category are not subject to any numerical caps, so they can receive their visas soon after their petitions are approved."  Cuthill v. Blinken, 990 F.3d 272, 274 (2d Cir. 2021).  However, the petitions for other categories of relative visa seekers—such as "adult (21 or over) sons and daughters of citizens"— are then sent to the NVC and placed in a "first-come, first-served queue with others in

4

her category in order of 'priority date'— that is, the date on which the visa petition was filed." Id. at 275; accord Kumar v. USCIS, No. 16-CV-3609, 2017 WL 3268373, at *1 (E.D.N.Y. July 28, 2017) (same).  "After the NVC determines that all preliminary steps have been accomplished, it marks the case file as 'documentarily complete' and works with the appropriate U.S. Embassy with jurisdiction over the applicant's place of residence to schedule an appointment for the applicant's in-person interview." Ahmed v. Bitter, No. 23-CV-189, 2024 WL 22763, at *1 (E.D.N.Y. Jan. 2, 2024).  "After that interview, a United States consular officer must either issue the visa, refuse the visa, or discontinue granting the visa." Id.  The visa applicant bears the burden of proof for establishing eligibility throughout this process.  See 8 U.S.C. § 1361.

> B.    Count One: Agency Action Unreasonably Delayed

>> 1.    The Doctrine of Consular Nonreviewability Bars Judicial Review of Plaintiff's Unreasonable Delay Claim

The government moves for dismissal of plaintiff's unreasonable delay claim on the ground that judicial review is barred by the doctrine of consular nonreviewability.[3]  See Defendant's Memorandum of Law in Support of Motion to Dismiss, at 1 (Doc. No. 11-1).  The court agrees.

---

[3] The government also moves for dismissal because "the mandamus statute does not provide the [c]ourt with jurisdiction over the allegations made in the [C]omplaint."  See Defendant's Memorandum of Law in Support of Motion to Dismiss, at 1 (Doc. No. 11-1).  Although the court agrees with the defendants that the plaintiff's Complaint does not demonstrate entitlement to mandamus relief, that does not necessarily foreclose subject matter jurisdiction, because the plaintiff also brings this action under the APA to compel agency action unreasonably delayed, see Compl. at ¶¶ 7, 21, which could constitute a separate basis for subject matter jurisdiction.  Nonetheless, because the court concludes that it lacks the authority to adjudicate this matter under the doctrine of consular nonreviewability, it need not address the issue of mandamus.

The Second Circuit has held that, under the doctrine of consular nonreviewability, it "is settled that the judiciary will not interfere with the visa-issuing process."[4]  See Hsieh v. Kiley, 569 F.2d 1179, 1181 (2d Cir. 1978).  There is no question that this doctrine "precludes judicial review of a consular official's decision to issue or withhold a visa."  Alharbi v. Miller, 368 F. Supp. 3d 527, 553 (E.D.N.Y. 2019) (quoting Abdo v. Tillerson, No. 17-CV-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019)).  Although the Second Circuit has not expressly ruled on whether the doctrine of consular nonreviewability applies to suits seeking to compel adjudication of a visa application, most courts in this Circuit to address the issue have held that, under Hsieh, the doctrine indeed bars unreasonable delay claims, whether they are brought pursuant to the APA, the Mandamus Act, or both statutes.  See Nawaz v. U.S. Dep't of State, No. 22-CV-05343, 2024 WL 99486, at *4 (E.D.N.Y. Jan. 9, 2024) (holding that "[p]laintiff's unreasonable delay claim is barred by the doctrine of consular nonreviewability" because "a distinction between challenging a decision and compelling adjudication is not a distinction that has a basis in Second Circuit law"); Nurjahan v. U.S. Dep't of State, No. 22-CV-2692, 2023 WL 2931581, at *2 (E.D.N.Y. Apr. 13, 2023) (concluding that the doctrine precludes review of plaintiff's unreasonable delay claim and noting that review "would undoubtedly 'interfere with the visa-issuing process' to issue an order moving plaintiff to the front of the queue" (quoting Hsieh, 569 F.2d at 1181)); Abdo,

---

[4] While the doctrine is generally viewed as jurisdictional, the Second Circuit has not clearly established whether the doctrine implicates the issue of subject matter jurisdiction or whether it is better understood as a prudential doctrine based on separation of powers concerns.  See Khanom v. Kerry, 37 F. Supp. 3d 567, 573 n.4 (E.D.N.Y. 2014).  In any event, this nuance does not change the court's analysis because, "[r]egardless of how the issue is framed, [a] [c]ourt generally cannot review a consular officer's decision to issue or deny a visa to any particular [foreign individual]."  Alharbi v. Miller, 368 F. Supp. 3d 527, 553 n.7 (E.D.N.Y. 2019).

2019 WL 464819, at *3 ("In this Circuit, the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a plaintiff seeks to compel an official to simply adjudicate a visa application.'" (quoting Al Naham v. U.S. Dep't of State, No. 14-CV-9974, 2015 WL 3457448, at *3 (S.D.N.Y. June 1, 2015))); Saleh v. Holder, 84 F. Supp. 3d 135, 139-40 (E.D.N.Y. 2014) (holding that the doctrine of consular nonreviewability bars courts from "order[ing] a consulate to adjudicate a visa application by some judicially-determined calendar").

The court notes that some courts outside this Circuit, including the Ninth Circuit, have held that the doctrine does not apply where a plaintiff simply seeks to compel adjudication of a visa application.  See, e.g., Patel v. Reno, 134 F.3d 929, 931-32 (9th Cir. 1997).  A small minority of courts in this Circuit have also found that the doctrine does not necessarily apply to unreasonable delay claims.  See, e.g., Ahmed, 2024 WL 22763, at *5-6.  While the court respects these decisions, it concurs with the vast majority of its fellow district courts in this Circuit that the distinction between a court reviewing a visa decision and a court "compel[ling] an official to simply adjudicate a visa application . . . is not one that has a basis in Second Circuit law."  Al Naham, 2015 WL 3457448, at *3.  The Second Circuit has expressly instructed that courts should not "interfere with the visa-issuing process."  See Hsieh, 569 F.2d at 1181.  Issuing an order compelling adjudication of Ms. Khan's visa, and thereby "moving [her] to the front of the queue", would constitute, in this court's view, interference with the visa-issuance process.  Nurjahan, 2023 WL 2931581, at *2.

The court therefore concludes that, under existing Second Circuit case law, the doctrine of consular nonreviewability bars its review of plaintiff's unreasonable delay claim under the APA and Mandamus Act.  The defendants' Motion to Dismiss Count One of plaintiff's Complaint is therefore granted and Count One is dismissed without prejudice.[5]

2.      Even if the Doctrine of Consular Nonreviewability Did Not Bar Judicial Review of Plaintiff's Unreasonable Delay Claim, the Claim Would Otherwise Warrant Dismissal Under Rule 12(b)(6)

The court notes that, even if it had concluded that the doctrine of consular nonreviewability does not apply and had considered plaintiff's unreasonable delay claim on its merits, it would have concluded that the claim, as alleged, cannot overcome the six-part test set forth in Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984), which assesses the reasonableness of agency delay.[6]

Specifically, the court agrees with the government that the first and second TRAC factors—whether an agency's time to act is governed by a rule of reason and

_____

[5] Because the dismissal of plaintiff's unreasonable delay claim is based on the doctrine of consular nonreviewability, which may implicate jurisdictional issues, the court's dismissal of the claim is without prejudice.  See Katz v. Donna Karan Co., 872 F.3d 114, 116 (2d Cir. 2017) (noting that "a complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction").

[6] In his Opposition Memorandum, the plaintiff argues that dismissal of his unreasonable delay claim, pursuant to TRAC, should be denied because the TRAC analysis is a fact-intensive inquiry that "is premature at the motion to dismiss stage."  Pl.'s Opp. at 22.  As discussed above, the court has concluded that the doctrine of consular nonreviewability bars judicial review of plaintiff's claim.  See Section IV.B.1, supra.

Nonetheless, the court notes that it respectfully disagrees with the plaintiff's argument that TRAC is usually inappropriate at the motion to dismiss stage.  Courts in this Circuit have generally held that, because unreasonable delay claims "turn in part on the operation of a government agency and the rationality of its public processes", they should generally be "decid[ed] . . . at the motion-to-dismiss stage before discovery[.]"  Kaur v. Mayorkas, No. 22-CV-4514, 2023 WL 4899083, at 5 n.6 (S.D.N.Y. Aug. 1, 2023) (quoting Sheiner v. Mayorkas, No. 21-CV-5272, 2023 WL 2691580, at 5 n.12 (S.D.N.Y. Mar. 29, 2023)).

whether Congress has provided a timetable with which it expects the agency to act, <u>see</u> <u>id.</u> at 80—clearly favor the defendants.  As other courts have held, the government applies a "rule of reason" to visa applications by adjudicating them in the order they were filed.  <u>See, e.g.</u>, <u>N-N v. Mayorkas</u>, 540 F. Supp. 3d 240, 260-61 (E.D.N.Y. 2021). Congress has not imposed a timetable governing the consideration of visa applications; rather, it confers on the State Department wide discretion in this process.  <u>See</u> <u>Ahmed</u>, 2024 WL 22763, at \*7.  Absent such congressional guidance, case law provides, in the immigration context, that delays between approximately three and five years are generally not unreasonable.  <u>See, e.g.</u>, <u>Yan Chen v. Nielsen</u>, No. 17-CV-7157, 2018 WL 1221130, at \*2 (E.D.N.Y. Mar. 8, 2018).  The third and fifth factors—whether the delay impacts human health and welfare and the nature of the interests prejudiced by the delay, <u>see</u> <u>TRAC</u>, 750 F.2d at 80—weigh in favor of the plaintiff, but not decisively so because the court must also consider the situation of those who are facing "similarly difficult circumstances" and who would be passed in line by Ms. Khan were the court to grant plaintiff the relief he requests.  <u>See</u> <u>Mohammad v. Blinken</u>, 548 F. Supp. 3d 159, 168-69 (D.D.C. 2021).

The court also concludes that the fourth factor—whether expediting the adjudication would affect agency activities of a "higher or competing priority", <u>see</u> <u>TRAC</u>, 750 F.2d at 80—weighs in favor of the defendants.  An order from this court pushing Ms. Khan's visa case forward, at least in light of the significant and well-documented COVID-induced backlog, would impact the State Department's ability to determine its priorities.  Finally, the court agrees with Mr. Khan that the sixth factor need not be considered, and is thus neutral, because he does not allege that defendants'

delay was caused by bad faith.  Taken together, although the third and fifth TRAC factors weigh somewhat in favor of the plaintiff, the first, second, and fourth factors weigh decisively in favor of the defendants, which would foreclose plaintiff's unreasonable delay claim as pled.  See Cohen v. Jaddou, No. 21-CV-5025, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (noting that the "first and fourth [TRAC] factors are the most important").

Accordingly, even if this court's review were not barred by the doctrine of consular nonreviewability, it would have dismissed plaintiff's unreasonable delay claim, as alleged, for failure to state a claim.  See Nawaz, 2024 WL 99486, at *5 (noting that, "even if the [c]ourt were to conclude that Plaintiff's unreasonable delay claim was not barred by the doctrine of consular nonreviewability, the unreasonable delay claim nevertheless would be dismissed for failure to state a claim" under TRAC).

        3.      Plaintiff's Allegations Regarding the Controlled Application Review and Resolution Program Must Be Dismissed

As part of his unreasonable delay claim, the plaintiff also alleges that, based "[o]n information and belief," the defendants "are intentionally delaying a response" to Ms. Khan's Petition pursuant to the Controlled Application Review and Resolution Program ("CARRP").  See Compl. at ¶ 25.  CARRP, the defendants allege, prohibits USCIS field officers from approving an application with a potential "national security concern," which has caused "delay[ed] adjudication" of petitions and has disproportionately impacted predominantly Muslim countries, in violation of the INA.  See id. at ¶¶ 27-29.  In turn, the plaintiff seeks various forms of relief regarding CARRP, including a judgment that CARRP violates the INA and APA; an injunction to prevent defendants from applying CARRP to Ms. Khan's visa application; and an order rescinding CARRP.  See id. at 7.

The court has already determined that judicial review of plaintiff's unreasonable delay claim is barred by the doctrine of consular nonreviewability.  However, even considering the plaintiff's allegations regarding CARRP separately, the court concludes that they fail to create a claim upon which relief may be granted.  The Complaint offers only conclusory and speculative allegations that Ms. Khan's application was amongst those delayed due to "national security concerns", see id. at ¶¶ 24-25, 28, and it lacks any nonconclusory factual allegations as to how CARRP, which is administered by USCIS, has delayed the State Department's adjudication of Ms. Khan's Petition.  As the defendants correctly note, various courts have held that such allegations regarding CARRP are insufficient to state a claim for relief.  See Rahimian v. Blinken, No. 22-CV-785, 2023 WL 143644, at *10 n.8 (D.D.C. Jan. 10, 2023) (noting that "CARRP is a USCIS policy" that, "according to publicly available documents released by USCIS . . . does not apply to I-130 petitions" and that, "[c]onsequently, plaintiff's unsupported allegations fail to establish that CARRP played or continues to play a role in any delay in processing the visa application at issue"); Mahmood v. U.S. Dep't of Homeland Sec., No. 21-CV-1262, 2021 WL 5998385, at *6 (D.D.C. Dec. 2, 2021) (holding that "complaints alleging unlawful CARRP involvement . . . 'based on speculation' are not plausible on their face because they 'fail to allege how CARRP individually impacted their immigration proceedings'" (quoting Al-Saadoon v. Barr, 973 F.3d 794, 803-04 (8th Cir. 2020))).  This court agrees with these decisions, and it therefore concludes that, even if the doctrine of consular nonreviewability does not apply to plaintiff's CARRP-related allegations, those allegations still fail to state a claim upon which relief may be granted.

C.     Count Two: Due Process Violation

      1.     The Doctrine of Consular Nonreviewability Bars Judicial Review of
            Plaintiff's Due Process Claim

In the Second Circuit, there is a narrow exception to the doctrine of consular nonreviewability where a plaintiff alleges "certain kinds of constitutional claims", see Al Naham, 2015 WL 3457448, at *3, specifically, "First Amendment claim[s] [that assert the right] to have a visa applicant present [his or her] views in this country", see Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 125 (2d Cir. 2009).  The Second Circuit has not extended this narrow exception to other constitutional claims, such as Fifth Amendment Due Process claims.  See Nawaz, 2024 WL 99486, at *4 (dismissing plaintiff's due process claim on the basis of consular nonreviewability because it "does not fall within the [Second Circuit's] recognized exception [for First Amendment claims]").

Thus, the court concludes that Mr. Khan's Due Process claim is similarly barred by the doctrine of consular nonreviewability.  The defendants' Motion to Dismiss Count Two of plaintiff's Complaint is granted and Count Two is dismissed.

      2.     Even if the Doctrine of Consular Nonreviewability Did Not Bar
            Judicial Review of Plaintiff's Due Process Claim, the Claim Would
            Otherwise Warrant Dismissal Under Rule 12(b)(6)

However, even if Mr. Khan's Due Process claim were not barred by the doctrine of consular nonreviewability, the court agrees with the defendants that the claim, as pled, would otherwise require dismissal under Rule 12(b)(6).  Mr. Khan alleges that he has a "right to fundamental fairness in administrative adjudication"; that the "combined delay and failure to act by [d]efendants has violated [his] due process rights"; and that "[t]he combined delay and failure to act by [d]efendants has irrevocably harmed [him] by

12

causing family separation" between him and his daughter.  See Compl. at ¶¶ 35-37.
The court is not aware of any case law establishing that a plaintiff has a due process
right to the administrative adjudication of a family member's visa petition.  Nor is the
court aware of any case law holding that plaintiffs have a due process right to
cohabitate with their foreign-born family members in the United States.  Indeed, "courts
have consistently rejected arguments that such a right exists."  Ahmed, 2024 WL 22763,
at *9; accord Alharbi, 368 F. Supp. 3d at 570-71 (rejecting plaintiffs' argument that they
have a right "to raise their children in the United States").

The court is deeply sympathetic to Mr. Khan's difficult family situation, and to his
understandable frustrations with the U.S. immigration process.  It must conclude,
however, that, even if the doctrine of consular nonreviewability did not apply, plaintiff's
Due Process claim, as alleged, would fail as a matter of law.

## V.    CONCLUSION

For the reasons stated above, the defendants' Motion to Dismiss (Doc. No. 11) is
granted.  The plaintiff's Complaint is dismissed without prejudice.


**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of March 2024.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge